## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CAMP DRUG STORE, INC., individually and as the representative of classes of similarly-situated persons, )<br><br>Plaintiff, )<br><br>v. )<br><br>ARKRAY USA, INC. )<br><br>Defendant. )<br>---------------------------------------------------------- )<br><br>GLEN ELLYN PHARMACY, INC., individually and as the representative of classes of similarly-situated persons, )<br><br>Plaintiff, )<br><br>v. )<br><br>ARKRAY USA, INC. )<br><br>Defendant. ) | No. 20-cv-02511<br><br>Hon. John Z. Lee<br><br>**CLASS ACTION**<br><br>Consolidated with case No. 20-cv-2947 |

### CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Camp Drug Store, Inc. ("Camp Drug") and Glen Ellyn Pharmacy, Inc. ("Glen Ellyn" and, collectively with Camp Drug, "Plaintiffs"), bring this action on behalf of themselves and all other persons similarly-situated and, except as to those allegations pertaining to Plaintiffs or their respective attorneys, which allegations are based upon personal knowledge except as stated otherwise, allege

the following upon information and belief against defendant Arkray USA, Inc. ("Arkray" or "Defendant"):

PRELIMINARY STATEMENT

1.      On behalf of themselves and the class, Plaintiffs seek statutory damages and other relief from Defendant's practice of sending unsolicited advertisements by facsimile.

2.      Defendant has sent advertisements by facsimile in an attempt to market and sell property, goods, or services.

3.      The federal Telephone Consumer Protection Act, 47 USC § 227 (the "TCPA"), prohibits any person or entity from sending or having an agent send any "unsolicited advertisement" by facsimile ("junk faxes" or "unsolicited faxes").

4.      The TCPA mandates that if a person or entity sends an otherwise-unsolicited advertisement by facsimile to a fax recipient with which the sender has an "established business relationship," then the sender must include a specific, clear, and conspicuous opt-out notice on the first page of the advertisement. *See* 47 U.S.C. § 227 (b) (2) (D); and 47 C.F.R. § 64.1200 (a) (4) (iii).

5.      The TCPA provides a private right of action and provides minimum statutory damages of $500 per violation. If the Court finds the advertisements were sent knowingly or willfully, then the Court can increase the damages up to three times $500.

6.      Unsolicited faxes damage their recipients. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk

fax interrupts the recipient's privacy. Unsolicited faxes tie up telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, use paper and ink toner for the sender's marketing purposes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

7.     On behalf of themselves and all others similarly-situated, Plaintiffs bring this case as a class action asserting claims against Defendant under the TCPA, the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law of conversion and trespass.

8.     Plaintiffs seek an award of statutory damages for each violation of the TCPA.

## PARTIES, JURISDICTION AND VENUE

9.     Plaintiff Camp Drug Store, Inc. is an Illinois corporation with its principal place of business in Wood River, Illinois.

10.     Plaintiff Glen Ellyn Pharmacy, Inc., is an Illinois corporation with offices in Glen Ellyn, Illinois.

11.     Defendant Arkray is a Delaware corporation with its principal place of business in Minneapolis, Minnesota.

12.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227. The Court has supplemental jurisdiction over Plaintiffs' ICFA, conversion and trespass claims under 28 U.S.C. 1367.

13.    Personal jurisdiction exists over Defendant because it has transacted business and committed tortious acts within this State.

14.    Venue is proper because Defendant transacts business and committed statutory torts within this District.

<u>FACTS</u>

15.    Defendant is engaged in the business of manufacturing and providing medical devices for diabetes management and urine analysis.

16.    On information and belief, Defendant sent advertisements in fax broadcasts to one or more lists of targeted recipients throughout the United States and throughout the class period alleged herein.

17.    At least one of those faxes was sent to Camp Drug on April 23, 2020, a copy of which is attached as <u>Exhibit A</u>.

18.     At least three of those faxes were sent to Glen Ellyn on March 26, 2020, March 31, 2020 and April 22, 2020, copies of which are attached respectively as <u>Exhibits B, C and D</u>.

19.    The faxes attached as <u>Exhibits A through D</u> advertised the commercial availability or quality of Defendant's property, goods, or services.

20.    Plaintiffs are among the persons to whom Defendant sent advertisements by fax.

21.    Plaintiffs each maintain telephone facsimile machines that automatically prints faxes onto paper using toner / ink

22.    Plaintiffs did not expressly invite or give permission to receive advertisements by fax from Defendant.

4

23. Defendant's fax did not contain the opt-out notices required by the TCPA. *See, e.g.*, <u>Exhibits A through D</u>.

24. On information and belief, Defendant sent faxes to Plaintiffs and more than 39 other recipients without their prior express permission or invitation, and without the opt-out notice required on faxes sent to persons with whom Defendant can demonstrate an "established business relationship." This allegation is based, in part, on the fact that Plaintiffs never expressly invited or permitted anyone to send the subject fax advertisement to it, that the faxes attached as <u>Exhibits A through D</u> is a generic form fax, that sending advertisements by fax is an inexpensive way to reach a wide audience, and that the faxes attached as <u>Exhibits A through D</u> has no opt-out notice.

## CLASS REPRESENTATION ALLEGATIONS

25. Plaintiffs brings this action as a class action on behalf of themselves and the following classes of all others similarly-situated as members of the class, initially defined as follows:

### The TCPA Class

All persons sent at least one telephone facsimile message (a "fax"): (1) on or after April 23, 2016; (2) from or on behalf of Arkray; (3) advertising Arkray's property, goods, or services; (4) without the fax recipient's prior express invitation or permission; and (5) without the clear and conspicuous opt-out notice required by 47 C.F.R. § 64.1200 (a) (4) (iii).

### The ICFA Class

All persons sent at least one telephone facsimile message (a "fax"): (1) on or after April 23, 2017; (2) from or on behalf of Arkray; (3) advertising Arkray's property, goods, or services; (4) without the fax recipient's prior express invitation or permission; and (5) without the

clear and conspicuous opt-out notice required by 47 C.F.R. § 64.1200 (a) (4) (iii).

### The Common Law Class

All persons sent at least one telephone facsimile message (a "fax"): (1) on or after April 23, 2015; (2) from or on behalf of Arkray; (3) advertising Arkray's property, goods, or services; (4) without the fax recipient's prior express invitation or permission; and (5) without the clear and conspicuous opt-out notice required by 47 C.F.R. § 64.1200 (a) (4) (iii).

Plaintiffs anticipate modifying the proposed class definitions—including proposing subclasses if appropriate—after discovery about the scope of Defendant's fax advertising practices as well as discovery as to any potential affirmative defenses Defendant may plead.

26. Excluded from the class are Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers and directors, Defendant's legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, and his or her family.

27. On information and belief, Defendant's fax advertising campaigns involved other, substantially-similar advertisements also sent without the opt-out notice required by the TCPA. Plaintiffs intend to locate those advertisements in discovery. *See* Exhibit E, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

28. This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiffs' claims separately from the putative class's claims would create a risk of

inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

29. **Numerosity/Impracticality of Joinder**: On information and belief, the class includes more than thirty-nine persons and, thus, is so numerous that joinder of all members is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but can be obtained from Defendant's records or the records of third parties.

30. **Commonality and Predominance**: There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

    a.    Whether Defendant sent unsolicited advertisements by fax;

    b.    Whether Defendant's faxes advertised the commercial availability or quality of property, goods, or services;

    c.    The manner and method Defendant used to compile or obtain the lists of fax numbers to which they sent advertisements by fax;

    d.    Whether Defendant faxed advertisements without first obtaining the recipients' express permission or invitation;

e.      Whether Defendant included clear and conspicuous opt-out notices on their faxed advertisements, including all content the TCPA requires;

f.      Whether Defendant is directly or vicariously liable for violating the TCPA;

g.      Whether Plaintiffs and the other class members are entitled to statutory damages;

h.      Whether Defendant should be enjoined from faxing advertisements in the future;

i.      Whether the Court should award trebled damages;

j.      Whether Defendant's conduct violated ICFA;

k.      Whether Defendant's conduct constituted common law conversion; and

l.      Whether Defendant's conduct constituted trespass.

31.    **Typicality of Claims**: Plaintiffs' claims are typical of the claims of the other class members because Plaintiffs and all class members were injured by the same wrongful practices. Plaintiffs and the members of the class received Defendant's advertisements by facsimile and those advertisements did not contain an opt-out notice as required by the TCPA. Under the facts of this case, because the focus is on Defendant's conduct, if Plaintiffs prevail on their claims, then the putative class members will prevail as well.

32.     **Adequacy of Representation**: Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class it seeks to represent. Plaintiffs retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiffs intend to vigorously prosecute this action. Plaintiffs and their respective counsel will fairly and adequately protect the interest of members of the class.

33.     **Prosecution of Separate Claims would yield Inconsistent Results**: Even though the questions of fact and law in this action are predominantly common to Plaintiffs and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendant to operate under if or when class members bring additional lawsuits concerning the same unsolicited fax advertisements of if Defendants choose to advertise by fax again in the future.

34.     **A Class Action is the Superior Method of Adjudicating the Common Questions of Law or Fact that Predominate over Individual Questions**: A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiffs know of no difficulty to be

encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the class would be proper. Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

35.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

36.     Plaintiffs bring Count I on behalf of themselves and a class of similarly-situated persons (the "TCPA Class").

37.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

38.     The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

39.     The TCPA provides:

> 3.     Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B)     An action to recover for actual monetary loss from such a violation, or to receive

10

$500 in damages for each such violation, whichever is greater, or

(C)     Both such actions.

47 U.S.C. § 227 (b) (3).

40.    In relevant part, the TCPA states that "[t]he [Federal Communications] Commission shall prescribe regulations to implement the requirements of this subsection . . . in implementing the requirements of this subsection, the Commission shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (i) the notice is clear and conspicuous . . ." 47 U.S.C. § 227 (b) (2) (D) (i).

41.    Additionally, "a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful . . ." 47 U.S.C. § 227 (b) (2) (D) (ii). The shortest reasonable time has been determined to be thirty (30) days. 47 C.F.R. § 64.1200 (a) (4) (iii) (B).

42.    The opt-out notice must also include "a domestic contact telephone and facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice . . ." 47 U.S.C. § 227 (b) (2) (D) (iv).

43. "A notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (v) the telephone and facsimile machine numbers and the cost-free mechanism . . . permit an individual or business to make such a request at any time on any day of the week." 47 U.S.C. § 227 (b) (2) (D) (v).

44. The FCC's regulations of opt-out notices on facsimile advertisements are set forth at 47 C.F.R. § 64.1200 (a) (4) (iii)

45. The Court, in its discretion, can treble the statutory damages if the violation was knowing or willful. 47 U.S.C. § 227.

46. Defendant violated 47 U.S.C. § 227 *et seq.* by sending advertisements by fax to Plaintiffs and the other class members without their prior express invitation or permission and, to the extent Defendant will contend it sent the facsimiles on the basis of "established business relationship," by failing to include the clear, conspicuous, and content-rich opt-out notice on the first page of each facsimile.

47. Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients know how to prevent and avoid future fax transmissions of advertising material, and to provide the various cost-free means Congress required to be made available to do so. If senders do not clearly and conspicuously provide the opt-out content to the

recipients, then the recipients are unable to stop the burdens imposed by this form of advertisement.

48.    The TCPA is a strict liability statute and Defendant is liable to Plaintiffs and the other class members even if their actions were negligent.

49.    Defendant is liable because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, and/or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority and ratification.

50.    Defendant knew or should have known that Plaintiffs and the other class members had not given express invitation or permission for Defendant or anybody else to send them advertisements by facsimile and that the faxes did not display the opt-out notices required by the TCPA (including the FCC's regulations).

51.    Defendant's actions caused damages to Plaintiffs and the other class members. Receiving Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendant's faxes. Moreover, the subject faxes used Plaintiffs' and the class's fax machines. The subject faxes cost Plaintiffs time, as Plaintiffs and their employees wasted time receiving, reviewing and routing Defendant's illegal faxes. Time otherwise would have been spent on Plaintiffs' business activities. Defendant's faxes unlawfully interrupted Plaintiffs' and the other class members' privacy interests in being left alone. Finally, the injury and

property damage sustained by Plaintiffs and the other class members from the sending of the faxes occurred outside Defendant's premises.

52. Even if Defendant did not intend to cause damage to Plaintiffs and the other class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendant's advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly-situated, demand judgment in their favor and against Defendant, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B. That the Court award $500.00 in statutory damages against Defendant for each of its violations of the TCPA;

C. That the Court treble the statutory damages to $1,500 per violation if it finds that Defendant knowingly or willfully violated the TCPA;

D. That the Court enter an injunction prohibiting Defendant from sending advertisements by fax without first demonstrating that it has obtained express invitation or permission to fax advertisements or included the required opt-out notice on each advertisement sent by fax to a person with whom Defendant has an established business relationship; and

E. That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## ILLINOIS CONSUMER FRAUD ACT

53.　　Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

54.　　Plaintiffs bring Count I on behalf of themselves and a class of similarly-situated persons (the "ICFA Class").

55.　　Defendants engaged in unfair acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to Plaintiffs and others.

56.　　Unsolicited fax advertising is contrary to the TCPA and also Illinois law. 720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

57.　　Defendants engaged in an unfair practice and an unfair method of competition by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

58.　　Plaintiffs and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

59.　　Defendants engaged in such conduct in the course of trade and commerce.

60.　　Defendants' conduct caused recipients of their advertising to bear the cost thereof.

61.　　This gave Defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising

15

campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

62.     Defendants' shifting of advertising costs to Plaintiffs and the class members in this manner makes such practice unfair. In addition, Defendant's conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

63.     Defendants should be enjoined from committing similar violations in the future.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly-situated, demand judgment in their favor and against Defendant, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.     That the Court award compensatory damages against Defendant for each of its violations of the ICFA;

D.     That the Court enter an injunction prohibiting Defendant from sending advertisements by fax without first demonstrating that it has obtained express invitation or permission to fax advertisements or included the required opt-out

notice on each advertisement sent by fax to a person with whom Defendant has an established business relationship; and

      E.     That the Court award attorney's fees, litigation expenses and costs;

      F.     That the Court enter such further relief as the Court may deem just and proper.

**COUNT III**
**CONVERSION**

64.     Plaintiffs incorporate all paragraphs preceding Count I as though fully set forth herein.

65.     Plaintiffs bring Count III on behalf of themselves and a class of similarly-situated persons and alleging claims under the common law of conversion (the "Common Law Class").

66.     By sending unsolicited faxes to Plaintiffs and the other class members, Defendant improperly and unlawfully converted their fax machines, toner and paper to Defendant's own use. Defendant also converted the recipients' time to their own marketing use.

67.     Immediately prior to the sending of the unsolicited faxes, Plaintiffs and the other class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

68.     By sending the unsolicited faxes, Defendant permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

17

69.     Defendant knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

70.     Plaintiffs and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiffs and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendant.

71.     Defendant's unsolicited faxes that Plaintiffs received effectively stole Plaintiffs' employees' time by forcing one or more employees to receive, review, and act upon Defendant's illegal faxes. Just the time spent in retrieving an unsolicited facsimile from the fax machine, reviewing it, and tossing it in the garbage can is burdensome and wasteful and converts Plaintiffs' valuable time to Defendant's marketing effort. Defendant knew or should have known employees' time is valuable to Plaintiffs and the other class members.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly-situated, demand judgment in their favor and against Defendant, as follows:

A.      That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representative of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.      That the Court award compensatory damages against Defendant for each of its violations of the ICFA;

D.      That the Court enter an injunction prohibiting Defendant from sending advertisements by fax without first demonstrating that it has obtained express

invitation or permission to fax advertisements or included the required opt-out notice on each advertisement sent by fax to a person with whom Defendant has an established business relationship; and

E.     That the Court award attorney's fees, litigation expenses and costs;

F.     That the Court enter such further relief as the Court may deem just and proper.

## COUNT IV
## TRESPASS

72.     Plaintiffs incorporate all paragraphs preceding Count I as though fully set forth herein.

73.     Plaintiffs bring Count IV on behalf of themselves and a class of similarly-situated persons and alleging claims under the common law of conversion (the "Common Law Class").

74.     Plaintiffs and the class members were entitled to possession of the equipment they used to receive faxes.

75.     Defendants' sending Plaintiffs and the class members unsolicited faxes interfered with their use of the receiving equipment and constitutes a trespass to such equipment.

76.     Defendants acted either intentionally or negligently in engaging in such conduct.

77.     Plaintiffs and each class member suffered damages as a result of receipt of the unsolicited faxes.

78.     Defendants should be enjoined from continuing trespasses.

19

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly-situated, demand judgment in their favor and against Defendant, as follows:

A.      That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.      That the Court award compensatory damages against Defendant for each of its trespasses;

C.      That the Court enter an injunction prohibiting Defendant from sending advertisements by fax without first demonstrating that it has obtained express invitation or permission to fax advertisements or included the required opt-out notice on each advertisement sent by fax to a person with whom Defendant has an established business relationship; and

D.      That the Court award costs;

E.      That the Court enter such further relief as the Court may deem just and proper.

Respectfully submitted,

CAMP DRUG STORE, INC., individually and as the representative of a class of similarly-situated persons,


By:      /s/ Phillip A. Bock
                One of their attorneys

Phillip A. Bock (ARDC #6224502)
Jonathan B. Piper (ARDC #6196071)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC (#44533)
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555
Email: service@classlawyers.com

GLEN ELLYN PHARMACY, INC., individually and as the representative of classes of similarly-situated persons,

By:      /s/ Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Dulijaza (Julie) Clark
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

## JURY DEMAND

Plaintiffs demand trial by jury.

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

/s/ Phillip A. Bock

Phillip A. Bock (ARDC #6224502)
Jonathan B. Piper (ARDC #6196071)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC (#44533)
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555
Email: service@classlawyers.com

/s/ Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on July 28, 2020, he caused a copy of the foregoing to be served upon all counsel of record using the ECF system.

s/ Phillip A. Bock